**FOOTE MINERAL COMPANY,**
**Appellant,**

v.

**MARYLAND CASUALTY COMPANY,**
**Appellee.**

**No. 13970.**

United States Court of Appeals
Sixth Circuit.

April 22, 1960.

M. W. Egerton, Joseph A. McAfee, of Egerton, McAfee, Armstead & Davis, Knoxville, Tenn., on brief, for appellant.

Charles E. McNabb and Stuart F. Dye, of Kramer, Dye, McNabb & Greenwood, Knoxville, Tenn., on brief, for appellee.

Before MARTIN and WEICK, Circuit Judges, and HOLLAND, Senior District Judge.

MARTIN and WEICK, Circuit Judges.

In this action brought by appellant under an insurance policy issued by appellee, recovery of damages was sought for alleged loss sustained by injury to a generator and motor. The United States District Judge dismissed the complaint.

The case was tried without the intervention of a jury. There was no dispute as to the amount of damages sustained by plaintiff-appellant as the result of an accident causing injury to its motor and generator; but there was sharp issue between the parties upon the question of liability.

The policy issued by the appellee covered in express terms loss from an accident occurring while the generator "is in use or connected ready for use * *." The policy contained an express exception from liability while the "object is undergoing an insulation breakdown, test, *or is being repaired* or dried out." [Emphasis supplied.]

In a carefully prepared memorandum opinion, embracing findings and conclusions and a detailed description of the machinery and the use to which it was being put when the accident occurred, the District Judge found, in summation, that the generator had been "purchased and installed for the sole purposes of (1) generating and (2) transmitting direct current for use in manufacturing manganese metal, and it was not in use or connected ready for use at the time of the accident which caused the damage that is the subject of this suit." He concluded, moreover, that the generator was being "repaired" at the time of the accident and that the aforementioned exclusion provision of the policy therefore precluded recovery for the loss.

For the reasons stated by the trial judge, Honorable Robert L. Taylor, in his

well-reasoned opinion [reported in E.D. Tenn., 173 F.Supp. 925], the judgment of the district court is affirmed.

HOLLAND, Senior District Judge (dissenting).

This is a suit based on a contract of insurance. The defendant agreed with the plaintiff respecting loss from an accident to the General Electric and Westinghouse Motor Generator Set No. 2376471 while same was in use or connected ready for use, and agreed to pay for loss on same directly damaged by such accident. An accident to the generator did occur on April 11, 1956, while the policy was in force, and loss to the insured did occur by reason of the accident, the amount of which was stipulated.

Inquiry as to how the accident occurred is not material to the case, except in so far as it may throw light on whether the generator was in use as defined in the policy and whether the damage constituted repairs under the provisions of the Exclusion Clause in the policy.

Whether the work that was being done while there was a shut down of defendant's plant was accomplished carelessly, negligently, properly or otherwise, is not pertinent to this case. The ultimate purpose accomplished by this generator set was the furnishing of direct current to defendant's plant, and while the work was being done on the generator the alternating current of electricity could not be delivered to the plant. And the work could not be accomplished without a shut down of plant activity generally. This was so because the defendant's plant could not do or perform the work for which direct current was absolutely necessary.

A decision was made by the plaintiff that the commutator in the generator should be ground and in order to do this there had to be a shut down of the activities of the plant, because the plant would not function without direct current, and direct current could not be produced while the commutator was being ground. There is no quarrel about the fact that

such a decision was made. Whether it was a wise decision or not is not pertinent nor material to the case.

The gist of the case hinges around the inquiry as to whether the object insured, the generator, was in use under the language of the policy while this decision was being executed.

The defendant called in outside technical men to do the work. But whether this was wise or unwise is not material to the case, and no question is raised by the pleadings or proof.

The sole question on the first phase of the case is, was the generator in use under the policy language when the work was going on, and when the accident occurred.

The District Judge was so impressed by the ultimate purpose to be accomplished by this object, the creation of direct current of electricity, that he concluded that the object was not in use under the terms of the policy. With this I cannot agree.

On different occasions, one of which was after the policy was in force, the defendant made inspections of the generator, checking on its condition. The defendant was naturally very much interested in the generator being kept in good condition against a possible accident, which might arise from a developing faulty condition. There was a mutual interest in the matter of this big forty-ton piece of machinery being kept in good condition. The plaintiff could not produce its product without direct current electricity, and the Insurance Company had a heavy contingent liability interest if an accident occurred, which would produce damages or loss to the insured.

The grinding of the commutator was the process used to keep the surface reasonably smooth, and a neglected roughened surface arising from the continued operation of the generator would decidedly increase the hazard or danger of a possible accident to the generator Both parties were naturally concerned with keeping down the possibility of an

accident to the generator, the plaintiff from the standpoint of keeping its production going and the defendant of attempting to avoid liability on the policy through an accident.

The defendant is properly charged with knowledge of the general construction of the commutator. Insurance of this type, with large premiums paid, would lead to no other conclusion. The very construction of the commutator was such that it could be readily ground and resurfaced. The grinding of the commutator, thus known to be necessary from time to time, was just as much a part of the status of this piece of machinery in this plaintiff's plant as its function when delivering direct current to the plaintiff's plant.

In order for the grinding to be done, the brushes in the generator had to be removed. New ones had not been put in, because the accident occurred before this would take place, but even if new brushes had been put in, before an accident, such would be consistent with the generator being in use under the policy terms. Likewise had the grinding been completed before an accident, and had it been necessary to undercut the mica strips, such would have been consistent with the generator being said to be in use under the policy terms.

Periodic inspection and keeping the generator, with necessary grinding of the commutator, in good order and in functioning condition was contemplated as a part of the use of the generator under the terms of the policy in finally accomplishing the securing of direct current. Whether the machine was energized at the time of the accident, is entirely immaterial and irrelevant to the issues in this case.

The work that was being done on the generator in the grinding was altogether of a constructive nature to preserve this object insured in good working order. There had been no breakdown before the fatal day of April 11, 1956. Inspection of the generator prompted a decision to grind the commutator, and that which was done by the workmen before the accident and at the time of the accident was of this nature, and should not be considered and does not come within the Exclusion Clause of "being repaired" in the policy.

The facts of this case, when applied to the two parts of the Policy, which are the controversial clauses in the contract, mean simply this. When the generator was in action, running, and an accident occurred, the generator was in use. If it was not running, whether from a shut down for repairs, or because of a shut down in business, lack of orders, or what not, then it was not in use. At the time of the accident it was running. It was running or in action in the matter of the commutator being ground to obtain smoothness. It was not producing direct current for the plant's operations, but it was running; it was being operated in the process of grinding the commutator. The machine was so constructed and designed that the generator was to be in action, in use, when the commutator needed grinding. The Insurance Company, through its servants and agents, knew this, or ought to have known this. The Insurance Company was interested and made five inspections at various times, in order to see if this very grinding, among other matters, was advisable to keep the generator in good order. If the plaintiff had refused to grind the commutator when the Insurance Company representative concluded that grinding should take place, I rather expect cancellation by the Insurance Company would have been warranted. This, however, is not in the case. There is a justifiable conclusion, however, under the facts in this case that the Insurance Company agreed with the decision made by plaintiff that a grinding of the commutator at this time was proper in the exercise of good judgment to keep the machine in good working condition.

Further and as to the Exclusion Clause as to repairs. The machine was being operated to accomplish the grinding of the commutator, according to the design and construction of the machine, when this accident occurred, and the grinding

was constructively to keep the machine in good working condition. The generator was not idle, it was not shut down. Electrical energy was being used to keep it active, in order to accomplish the grinding, and this constructive preventive process was not repairing.

These conclusions which I state and which are warranted by the facts in the case, result not because the pertinent words are ambiguous. I do not depend upon any legal principle applicable to the interpretation of insurance contracts, justifying liberal or non liberal interpretation. These conclusions are reached with the words enjoying normal everyday definition.

I would reverse and remand with direction to enter a judgment for the plaintiff for the stipulated amount and costs.